## Roethlein v. Roethlein

C.P. of Lehigh County, no. 2003-FC-0894.

*Chrystyna M. Fenchen-Hawrylak*, for plaintiff.

*Beverly D. Roethlein,* pro se.

FORD, *J.,* October 28, 2010—This is a divorce case which involves prolonged litigation about equitable distribution of the parties' assets. The litigation has been extended by unreasonable conduct by defendant, Beverly D. Roethlein. Defendant filed the present notice of appeal from my order dated June 8, 2010. In that order, I granted the plaintiff's petitions for contempt and special relief and ordered the defendant to list for sale a parcel of real estate she owned. I further ordered that defendant pay a portion of proceeds from this sale to plaintiff to satisfy defendant's obligation to plaintiff under the equitable distribution order.

It is unclear what issues defendant attempts to raise in this appeal because of the vague and voluminous nature of the statement of issues she filed which does not comply with Pa.R.A.P. 1925(b). Thus, in this opinion prepared pursuant to Pa.R.A.P. 1925(a), I first address defendant's statement of issues. I then explain my rationale for entering the order of June 8, 2010. For the reasons that follow, the appeal should be dismissed.

### Procedural History

The plaintiff, Charles J. Roethlein, started this action by filing a complaint on July 28, 2003, seeking a divorce and equitable distribution of the parties' marital assets. After a contested bifurcation sought by plaintiff, Judge Michele A. Varricchio entered a divorce decree on October 8, 2008.

On November 14, 2008, the master in equitable

distribution filed his report which contained recommendations about disposition of the marital property. By order dated December 17, 2008, Judge Carol K. McGinley entered the equitable distribution order based on the master's report. Under the order, defendant retained properties the parties previously owned at 820 Whittier Drive, 726 Genesee Street, 738 Woodward Street, the "Lake in the Clouds" property and the "Indian Rocks" property (hereafter collectively referred to as "marital real estate"). Judge McGinley ordered plaintiff to execute special warranty deeds prepared by defendant conveying all interest plaintiff had in the marital real estate to the defendant. Additionally, defendant was ordered to refinance or otherwise remove plaintiff's name as an obligor on all liens encumbering the marital real estate within six months of the order. Further, the court ordered that defendant pay plaintiff $31,350.00 within 90 days of the date of the order.

On March 20, 2009, plaintiff filed a "petition to enforce the orders of court dated October 8, 2008, and December 17, 2008, and for contempt." In the petition, plaintiff contended that defendant failed to pay plaintiff $31,350.00, failed to provide plaintiff with the special warranty deeds, failed to remove plaintiff as an obligor on the liens, and failed to make mortgage payments on the property located at 738 Woodward Street which resulted in the initiation of a foreclosure action.

A hearing was conducted on plaintiff's petition on March 27, 2009. At the close of the hearing, Judge McGinley granted plaintiff's petition for special relief

and for contempt. The judge ordered defendant's property located at 738 Woodward Street to be listed for sale with plaintiff's selecting the realtor. The judge further ordered defendant to "sign the listing agreement...and all other documents required to effectuate the listing and sale of the property." The judge specified that defendant was not allowed to question the listing documents. Judge McGinley ordered that the Woodward Street property was to be initially listed at $129,000.00 and that this listing price was to be lowered by $10,000.00 per month until the property was sold. Defendant was to use a portion of the proceeds of the sale of the Woodward Street property to pay the plaintiff the $31,350.00 defendant owed him under equitable distribution. Finally, Judge McGinley ordered that defendant remove plaintiff's name from all encumbrances on the properties located at 820 Whittier Drive and 726 Genesee Street within seven days of the order.

From April of 2009 through January of 2010, plaintiff filed five petitions for special relief and contempt. In all of these petitions, plaintiff contended that defendant, among other things, violated Judge McGinley's order of March 27, 2009, by failing to cooperate in the sale of the Woodward Street property. I conducted hearings on each of these petitions on April 29, 2009, July 1, 2009, October 23, 2009, December 29, 2009, and January 20, 2010. (Defendant failed to appear at the December 29, 2009, hearing despite receiving notice.) The testimony presented at all of these hearings revealed that the defendant consistently refused to sign documents

necessary to effectuate the sale of the Woodward Street property and questioned the legitimacy of almost all documents. Although I only found the defendant to be in contempt following three of the hearings (April 29, 2009, October 23, 2009, and December 29, 2009), the testimony presented at all of the hearings demonstrated that defendant was steadfast in her refusal to cooperate in good faith with both the plaintiff and the court. Through this tedious process of contempt hearings, slow progress was made toward the sale of the Woodward Street property.

On February 26, 2010, plaintiff filed a petition for special relief. In the petition, plaintiff noted that settlement on the Woodward Street property was scheduled to take place on March 10, 2010, at 9:30 a.m., at counsel table outside of courtroom 5A of the Lehigh County Courthouse. (This is the courtroom to which I am assigned. The scheduling of this settlement was done without my input and without the input of any other court personnel.) Plaintiff, anticipating that defendant would not participate in settlement, requested that the court authorize plaintiff to execute and deliver the deed to the Woodward Street property to the buyers on behalf of defendant.

Defendant failed to appear outside courtroom 5A for settlement due to illness. Therefore, I entered an order directing defendant to attend settlement on Monday, March 22, 2010, at 9:00 a.m., at the law office of John A. Zapf, II, in Bethlehem, Pennsylvania.

On the morning of March 22, 2010, the plaintiff presented another motion for special relief. Plaintiff asked the court to take steps to ensure that the settlement

occurred which was scheduled for later the same day. Due to defendant's history of refusing to sign documents and only signing some of the documents when she stood before the court, I directed Lehigh County Deputy Sheriff Kevin Drosdak (the deputy assigned to this judge's courtroom 5A) to execute the deed and sign all documents on behalf of defendant for the sale of Woodward Street if defendant failed to appear at settlement.

As plaintiff anticipated, defendant failed to appear at the attorney's office at 9:00 a.m. for settlement. I ordered that the settlement be delayed from 9:00 a.m. to 1:30 p.m. to give the defendant another opportunity to sign the documents herself. Efforts were made to contact the defendant. When defendant again failed to appear for settlement, Deputy Drosdak signed the deed and settlement documents.

On April 29, 2010, the plaintiff filed "petition to enforce the order of court dated December 17, 2008, and for contempt of the March 27, 2009, and March 10, 2010 order of court." In this petition, plaintiff contended that defendant's failure to cooperate in the sale of Woodward Street unnecessarily delayed the sale resulting in a lower listing price and her failure to make mortgage payments on the property resulted in the foreclosure action causing an unnecessary accumulation of costs and interest. As a result of these factors, there were no proceeds from the sale of Woodward Street. Thus, defendant could not use that sale to pay plaintiff the $31,350.00 she still owed him under the equitable distribution order. To

remedy this situation, plaintiff requested that the court order the sale of defendant's property at 726 Genesee Street, defendant's only real estate not encumbered by a mortgage.

I conducted a hearing on plaintiff's petition on May 14, 2010. On June 8, 2010, I entered an order granting the plaintiff's petition and ordering defendant to list the Genesee Street property. I ordered defendant to cooperate in the sale. A section of Paragraph 4 of the order read:

> [T]he net proceeds realized from [the] sale shall be divided by plaintiff's receiving the first $32,350.00 of proceeds and defendant's receiving all remaining net proceeds. The referenced $32,350.00 payment to plaintiff is intended to satisfy defendant's obligation to plaintiff of $31,350.00 under the equitable distribution section of the order dated December 17, 2008, and $1,000.00 in counsel fees to plaintiff....

I further ordered that, in the event defendant failed to cooperate in the sale of Genesee Street, I would appoint an attorney-in-fact for defendant to do what was necessary for the sale.

On June 18, 2010, the defendant filed this appeal to the Superior Court. In the appeal, defendant challenges my order of June 8, 2010.

In response to an earlier order, defendant filed her "concise statement of errors" ("statement") on July 22, 2010. This was five pages of single-spaced text without any numbering of paragraphs with approximately 67 pages of attachments. The text of the third page of this statement

does not logically connect with the next page so it appears a page is missing.

## Discussion and Conclusions of Law

### Vague and Voluminous Pa.R.A.P. 1925(b) Statement

The vague and voluminous nature of defendant's statement precludes this court from making a meaningful review. "[The Superior Court]...explained that 'a concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent to no Concise Statement at all.'" *Kanter v. Epstein*, 866 A.2d 394, 400 (Pa.Super. 2004) (quoting *Commonwealth v. Dowling*, 778 A.2d 683, 686-87(Pa.Super. 2001)).

> Our law makes it clear that Pa.R.A.P. 1925(b) is not satisfied by simply filing any statement. Rather, the statement must be "concise" and coherent as to permit the trial court to understand the specific issues being raised on appeal. Specifically, this court has held that when appellants raise an "outrageous" number of issues in their 1925(b) statement, the appellants have "deliberately circumvented the meaning and purpose of Rule 1925(b) and ha[ve] thereby effectively precluded appellate review of the issues [they] now seek to raise." We have further noted that such "voluminous" statements do not identify the issues that appellants actually intend to raise on appeal because the briefing limitations contained in Pa.R.A.P. 2116(a) makes the raising of so many issues impossible. "Further, this type of extravagant 1925(b) statement makes it all but impossible for the trial court to provide a comprehen-

sive analysis of the issues." *Tucker v. R.M. Tours*, 939 A.2d 343, 346 (Pa.Super. 2008) (citations omitted).

By my count, the first five pages of the statement mention 16 allegations of error. Several of the allegations focus on matters completely irrelevant to the issues underlying the order of June 8, 2010. All of them are vague and confusing. Because defendant failed to file a concise statement which conforms to Pa.R.A.P. 1925(b), defendant waived all issues on appeal and this appeal should be dismissed.

In the event the Superior Court declines to dismiss this appeal based on the nature of defendant's statement, I now explain my rationale in entering the order of June 8, 2010.

*Reasons for Entering the Order of June 8, 2010*

In entering the order of June 8, 2010, I was bound by Judge McGinley's equitable distribution order of December 17, 2008, as well as Judge McGinley's order of March 27, 2009. "[T]he coordinate jurisdiction rule commands that upon transfer of a matter between trial judges of coordinate jurisdiction, a transferee trial judge may not alter resolution of a legal question previously decided by a transferor trial judge." *Zane v. Friends Hospital*, 575 Pa. 236, 243, 836 A.2d 25, 29 (2003).

Under the equitable distribution order, plaintiff was entitled to collect $31,350.00 from the defendant. After defendant failed to make this payment to plaintiff, Judge McGinley ordered that defendant sell her Woodward Street property and use the proceeds of the sale to pay

plaintiff the $31,350.00. As was more fully outlined in *Procedural History*, defendant failed to cooperate in the sale of the Woodward Street property and allowed the property to go into foreclosure during the pendency of the sale. As a result of defendant's not acting responsibly, no proceeds were realized from the sale. Thus, defendant's obdurate conduct resulted in plaintiff's not receiving the $31,350.00 he was due under equitable distribution. An opportunity to satisfy that part of equitable distribution was lost. The only solution was to order defendant to sell her unencumbered Genesee Street property and use a portion of the proceeds from that sale to pay plaintiff the $31,350.00. (Defendant resides at another property that she owns, 820 Whittier Drive.)

A trial court has considerable discretion in ordering the means necessary to ensure that the terms of an equitable distribution order are satisfied. The relevant statute, 23 Pa.C.S. § 3502(e), provides:

(e) Powers of the court. -- If, at any time, a party has failed to comply with an order of equitable distribution, as provided for in this chapter or with the terms of an agreement as entered into between the parties, after hearing, the court may, in addition to any other remedy available under this part, in order to effect compliance with its order:

...

(2) authorize the taking and seizure of the goods and chattels and collection of the rents and profits of the real and personal, tangible and intangible property of

the party;

...

(4) order and direct the transfer or sale of any property required in order to comply with the court's order;

I acted within the authority granted under this statute.

I end with a note about my approach to this case from the date it was assigned to me. For the last few years of litigation, defendant acted without counsel. In recognition of the fact that real estate assets were the primary subjects of dispute and these properties were owned over the long term by the parties, I was fastidious in honoring defendant's due process rights often to the understandable chagrin of plaintiff and his counsel. I did this despite the fact that defendant was a difficult litigant and despite Judge McGinley's March 27, 2009, order that defendant sign all documents necessary to effectuate the sale of the Woodward Street property without questioning such documents. (A reading of the transcript of any of the hearings in which defendant participated reveals defendant as a litigant who excessively rambled into irrelevant subjects and who was downright difficult for court and plaintiff.) The record demonstrates that I granted defendant numerous opportunities and time extensions to come into compliance with court orders and did what was needed to prevent plaintiff from gaining what might be perceived as unfair advantages from defendant's pro se status.

For all of the above reasons, the defendant's appeal should be dismissed.